UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:20-CR-438-1M

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>RANDALL WOMBLE SMITH,<br>       Defendant | SENTENCING MEMORANDUM |

Defendant Randal Smith, through counsel, hereby files this Sentencing Memorandum in support of his Motion for Variance. Mr. Smith respectfully shows this Court the following, all upon information and belief:

## I. STATEMENT OF THE CASE

Mr. Smith was arrested by Cary Police officers after a search warrant was executed at his place of business on December 18, 2019. He has been in continuous custody since that date. He was charged by the State of North Carolina with 18 counts of Second-Degree Exploitation of a Minor. These charges were later indicted by a grand jury on January 28, 2020. The illegal materials involved in the state charges are the same as in the case before this Court. Mr. Smith was additionally indicted with one count of Taking Indecent Liberties with a Minor on August 18, 2020. Nothing substantive occurred in State court on any charges.

The government filed an eleven-count Indictment in this case on September 23, 2020. Counts One through Ten charged Receipt of Child Pornography; Count Eleven charged Possession of Child Pornography Depicting Children under 12. The State charges were later dismissed on November 5, 2020. Mr. Smith waived his detention hearing on November 12, 2020.

Mr. Smith entered into a plea agreement with the Government and pled guilty to Count Ten (Receipt) before this Court on February 19 of this year. The remaining counts are to be dismissed after sentencing.

## II. RANDALL SMITH'S BACKGROUND AND FAMILY

Randall Smith is 67 years old. He was born in Danville, Virginia in 1954. After college, Mr. Smith started his own machining company, Plastic Tooling Corporation, where he remained employed as the principal owner of the business until his arrest. Mr. Smith and his wife, Barbara, raised two daughters, Caroline and Morgan. At the time of his arrest, he lived in Cary, North Carolina, with his wife and Caroline. This was the family home since 1993. Mr. Smith's wife still resides there and their divorce is pending at this time.

Randall Smith has no prior criminal record outside of minor traffic violations. The present incarceration is the first time he has experienced being in custody.

As is evident from the character letters submitted by several of his family members, two former employees, and one friend, Mr. Smith lived his adult life as a kind, compassionate, and generous man. He started his business from the ground up and maintained it throughout his career. He was a loving father to his two daughters and several of their friends commented in investigation that they never felt even slightly uncomfortable spending time at the Smith's home while visiting his daughters.

Mr. Smith's present incarceration has obviously been an unimaginable life-changing experience for him. There is nothing he can do at this time that would change his accountability for the behavior he endeavored in as he became a consumer and then an addict of illegal images he downloaded from the "Freenet" website over the course of several years. Mr. Smith realizes the seriousness of his conduct. He has learned and identified the ways his conduct underlying

these charges has real effects on actual child victims. He can only wish he had awakened to this understanding and addressed his behavior in some other manner prior to being charged, but that did not occur. As he sits awaiting sentence today, he knows that he is virtually indistinguishable from so many other defendants.

### III. MOTION FOR VARIANCE

The Sentencing Guidelines for the possession of receipt of child pornography can result in extreme sentences for defendants such as Mr. Smith. There are several reasons for this Court to vary its sentence from the Guidelines and impose a reasonable sentence falling outside their considerable constraints and limitations. The factors outlined in § 3553(a) allow this Court to take into account the nature and circumstances of the offense along with the history and characteristics of Mr. Smith.

Regarding the nature and circumstances, Mr. Smith was found to have a computer and hard drives at his place of business which contained the illegal downloaded files of images and videos. He cooperated fully with the investigators executing the search warrant. There were no minor employees at his business and there were no employees with access to the specific computer/and or drives which contained the files. Mr. Smith never brought the images or computer files to his home where his wife and youngest daughter still lived. Further, there is no allegation or reason to believe that Mr. Smith ever shared or observed the files saved on his computer and drive with any other person whatsoever. This was a private, dark, and secret addiction that he kept entirely to himself and for which he expresses the greatest regret.

When the officers came to serve the search warrant, Mr. Smith was at work alone. He hid nothing from the officers and was open and forthcoming with answers to their questions and explanations as to where files were located on his computers and drives as well as the method

used to obtain them from "Freenet."

Regarding his history and characteristics, it is evident by the letters written to the Court from his family members, two former employees, and one friend, that Mr. Smith's character is one of a kind and sensitive man. He is spoken of as being caring, generous, and attentive to his familial and work relationships. He had a lifelong history of living within the law as is evidenced by his lack of any prior criminal charges other than minor traffic violations.

### A. Sentencing Differences Between Receipt and Possession Are No Longer Based On Any Significant Differences In Conduct

The United States Sentencing Commission issued a report in June 2021 addressing sentencing in non-production child pornography cases.[1] The stated focus of the report is to update and expand its 2012 Report to Congress on the same subject. The Commission pointed out numerous reasons for its examination of this area at that time:

> "First, while only a small percentage of the overall federal criminal caseload, child pornography offenses had grown substantially both in total numbers and as a percentage of the total caseload. Second, there had been a steady increase in the percentage of sentences imposed below the applicable guideline range in non-production child pornography cases, which indicated that courts increasingly believed the sentencing scheme for such offenders was overly severe. Third, the volume and accessibility of child pornography images had increased dramatically due to the rising use of computers, digital cameras, and internet-based technology like peer-to-peer ("P2P") file sharing programs. The changes in computer and internet technology typically used by non-production child pornography offenders rendered the sentencing scheme insufficient to distinguish between offenders with different degrees of culpability." (Footnotes omitted.)

Mr. Smith was convicted of "Receipt" under 18 U.S.C. §§ 2252(a)(2), 2252(b) and 2252(b)(1). This is the same statute that punishes distribution of the material. In a pre-internet

---

[1] "Federal Sentencing of Child Pornagraphy: Non-Production Offenses," United States Sentencing Commission, June 2021. The report is available on the Sentencing Commission's webiste at https://www.ussc.gov/research/research-reports/federal-sentencing-child-pornography-non-production-offenses. (the Report).

era, a typical scenario may be that offenders of these statutes had to "send" (distribute) or "receive" these materials through some system such as the mail. The distinction between "Possession" under § 2252(a)(4), and the Receipt statutes above seems to have been lost in conjunction with the coming of the internet age and downloading of files and images as well as on-line viewing that are now a regular part of every day life. The Commission's Report noted that its 2012 recommendations included addressing this very concern. Specifically, the report states, "Congress's prior rationale for punishing receipt more severely than possession had been largely eliminated."[2] It found that, "as a practical matter, the conduct underlying a receipt or possession charge is materially identical."[3] However, sentence differences varied with respect to these two different convictions. The Commission also suggested updating the guideline to reflect different types of distribution, presumably in reference to today's internet age including the emergence of file-sharing websites or peer-to-peer networks.[4]

The statutes for Receipt includes a 5-year mandatory minimum punishment while the statute for Possession does not have a minimum. The § 2G2.2 guideline further extends the potential differences in punishment for nearly identical conduct by assigning Possession a Base Level of 18 while Receipt begins at Level 22.

### B. The § 2G2.2 Guideline Is Problematic

In Mr. Smith's guideline calculation submitted by Probation, enhancements are applied for the age (under 12) of the children depicted in the images (2 levels), masochistic or other violence or sexual abuse of a toddler (4 levels), the use of a computer (2 levels), and the number

---

[2] Page 2 of the Report, in the Introduction.

[3] First page of Chapter 1, under the heading "Statutory Scheme."

[4] Page 2.

of images being greater than 600 (5 levels). These enhancements *alone* increase the offense level by 13, from the base offense level of 22 to 35. The sentencing rage for level 35 is 168-210 months. 210 months is 17 and-a-half years; it is over 87 percent of the statutory maximum punishment for Receipt.

This is significant because the Commission has found that these four enhancements are present in the "vast majority" of cases.[5] Specifically, in its 2019 data, it found that over 95 percent of cases received the enhancements for age of the victims depicted and for the use of a computer.[6] The sadistic/masochistic or abuse of infants enhancement was found in 84 percent of cases, and the enhancement for number of images greater than 600 was found in 77.2 percent of cases.[7] The Report states these enhancements "are intended to increase the offense level based on the presence of an aggravating factor, but they routinely apply to the typical distribution, receipt, and possession offender, with minimal variation in application."[8] Finally, the report notes, "child pornography guideline has been subject to longstanding criticism from stakeholders and has one of the lowest rates of within-guideline range sentences each year.[9]

Mr. Smith respectfully asks this Court to instead impose a downward variance sentence under 18 U.S.C.§ 3553(a). He recognizes that his offense conduct is very serious, and that it merits an appropriate punishment in order to protect the public, deter future criminal conduct, and promote respect for the law. Considering his age and lack of prior exposure to the criminal

---

[5]Page 4 of the Report, under the heading "Key Findings."

[6]Also from page 4.

[7]Page 19.

[8]Also page 19.

[9]Page 23. Citation within the report omitted.

justice system, it is impossible to fully understand the impact this case and his custody status has already had on his understanding and appreciation for the wrongfulness of his actions. It is counsel's understanding that Mr. Smith would explain to the court that this conduct became an addiction, like many other addictions. He kept this habit hidden from any family or friends. He kept it out of his home and away from his children. He cooperated as fully as possible with the authorities investigating this action. He has never offered any excuse or placed blame on anything but his own judgment for his choices that led him to be in this position today.

Undersigned counsel submits that a sentence of 87 months would be sufficient, but not greater than necessary, to fulfill the goals of sentencing under 18 U.S.C. § 3553(a). This sentence would be within the guideline for a calculated offense level of 29. Taking into account the points made above about the guideline, as well as Mr. Smith's lack of prior criminal history and the obvious support and care of loved ones demonstrated by the character letters written on his behalf, this sentence would be a very serious and meaningful punishment. There is no question that a sentence of this length would provide adequate deterrence of future offenses by this defendant. Finally, it would allow for correctional treatment in the form of specific psychological-sexual programs and counseling that could be available to Mr. Smith on a period of supervised release encompassing the rest of his natural life.

Mr. Smith has been in jail since December 18, 2019. He has lost his business that he began and ran from the ground up for his entire adult life. His divorce proceedings are on-going. He retains a strong relationship with his youngest daughter, Caroline, his sister Robyn. He also still holds dear his relationship with his two other siblings, Philip and Lori.

Should the Court take into account the time he has already served including while in State custody, Mr. Smith would still have over 5 years left to serve in federal prison. Such a

sentence would be a significant punishment while allowing some real possibility that he may have a remainder of his life to be lived outside of prison.

## **CONCLUSION**

Based on the above, Randall Smith respectfully asks that this Court:

1. Impose a sentence of 87 months in prison, which would be sufficient, but not greater than necessary, to meet the goals of sentencing;

2. Recommend that he be housed in a facility near the Eastern District of North Carolina; recommend that he receive mental health treatment and/or counseling while in the custody of the Bureau of Prisons.

3. Recommend appropriate conditions of his supervised release so that he may re-enter the community after serving his sentence in the most positive light available to him.

Respectfully submitted this the 19th day of October, 2021.

/s/ Colby T. Berry
Colby Berry
Attorney for Defendant
KURTZ & BLUM, PLLC
434 Fayetteville Street, Suite 710
Raleigh, North Carolina 27601
Telephone: 919-832-7700
Fax: 919-832-2740
E-mail: c.berry@kurtzandblum.com
North Carolina State Bar No.: 38908

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of this Sentencing Memorandum was served upon:

CHARITY L. WILSON
Assistant United States Attorney
Eastern District of North Carolina
150 Fayetteville Street, Suite 2100
Raleigh, NC 27601,

and

John E. Harris
United States Attorney's Office - EDNC
150 Fayetteville Street, Suite 2100
Raleigh, NC 27601

by electronically filing the foregoing with the Clerk of Court on October 19, 2021, using the CM/ECF system which will send notification of such filing to the parties.

This the 19th day of October, 2021.

/s/   Colby T. Berry
Colby Berry
Attorney for Defendant
KURTZ & BLUM, PLLC
434 Fayetteville Street, Suite 710
Raleigh, North Carolina 27601
Telephone: 919-832-7700
Fax: 919-832-2740
E-mail: c.berry@kurtzandblum.com
North Carolina State Bar No.: 38908